# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KONI B.V., a Dutch company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:17-CV-5369 |
| v. ) | |
| ) | Hon. Matthew F. Kennelly |
| TENNECO INC. and TENNECO ) | |
| AUTOMOTIVE OPERATING COMPANY ) | |
| INC., both Delaware corporations, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SECOND AMENDED COMPLAINT FOR
## TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, FRAUD,
## UNFAIR COMPETITION, AND UNJUST ENRICHMENT

Plaintiff KONI B.V. ("Koni") states as follows for its Second Amended Complaint against Defendants TENNECO INC. and TENNECO AUTOMOTIVE OPERATING COMPANY INC. for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 and the Illinois Trade Secrets Act, and for breach of contract, fraud, unfair competition, and unjust enrichment.

## I. THE PARTIES

1. Koni is a limited liability company organized under the laws of The Netherlands with its principal place of business at Korteweg 2, 3261 NH Oud-Beijerland, The Netherlands. Koni is a subsidiary of ITT Inc., which is headquartered in White Plains, New York and is a global manufacturer of components and customized technology solutions for the energy, transportation, and industrial markets. Koni is part of the Motion Technologies segment of ITT

Inc.  Koni is engaged in the business of, among other things, developing and manufacturing high-performance shock absorbers for vehicles and related components.

2.  Tenneco Inc. ("Tenneco (Parent)") is a Delaware corporation with a principal place of business at 500 North Field Drive, Lake Forest, Illinois 60045.

3.  Tenneco Automotive Operating Company Inc. ("Tenneco (U.S. Subsidiary)") is a subsidiary of Tenneco Parent, and is also a Delaware corporation with a principal place of business at 500 North Field Drive, Lake Forest, Illinois 60045.

4.  On information and belief, both Tenneco (Parent) and Tenneco (U.S. Subsidiary) manufacture and sell products for vehicles, including shock absorbers.

## II.  JURISDICTION AND VENUE

5.  This action arises under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b)-(c).  This action also arises under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065, and the common law of Illinois.

6.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the DTSA.  Further, this Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367 because such claims are so closely related to Koni's claim for misappropriation of trade secrets under the DTSA that they form part of the same case or controversy.

7.  In addition, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, excluding interest and costs, and because Koni is a citizen of The Netherlands, whereas Tenneco Inc. and Tenneco Automotive Operating Company Inc. are both citizens of Illinois and Delaware.

8.  Venue is appropriate in this Judicial District under 28 U.S.C. § 1391(b).

### III.  GENERAL ALLEGATIONS

9.      Through the expenditure of considerable time, effort, and money, Koni possesses substantial and valuable intellectual property, including trade secrets that relate to frequency selective damping technology ("FSD") (also referred to as frequency dependent damping or "FDD").  Koni uses its FSD technology to manufacture valves that are incorporated into shock absorbers made by Koni, Tenneco, and others.

10.     In conventional shock absorbers, there is a trade-off between ride comfort and handling (continuous contact between wheel and surface).  Shock absorbers with less damping offer a softer and more comfortable ride but compromise the vehicle's handling, while shock absorbers with more damping offer a firmer ride and better handling but less comfort.

11.     Koni's FSD technology allows a shock absorber to provide different amounts of damping in different circumstances, thereby combining the benefits of both soft and firm shock absorbers.  Specifically, FSD provides less damping and a softer ride for high-frequency oscillations (*e.g.*, small, brief movements from driving over gravel or cobblestones) but provides more damping and a firmer ride for low-frequency oscillations (*e.g.*, large, extended movements from driving over a pot hole).  Moreover, FSD provides these benefits with purely mechanical valves that are much simpler than alterative solutions that rely on electronic damping adjustments.

12.     Koni's trade secrets relating to its FSD technology derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, Koni's competitors and others who could obtain economic value from the use or disclosure of that information.  Koni has taken reasonable precautions to safeguard the confidentiality of its trade secrets, and third parties or the public could not easily acquire those

trade secrets. Koni's precautions include the use of confidentiality agreements with potential business partners, to maintain and ensure the confidentiality of Koni's trade secrets.

13. The comfort and handling benefits of Koni's FSD technology have generated interest from many car manufacturers. One car manufacturer, Daimler, requested that Koni work together with Tenneco, who had previously provided shock absorbers to Daimler, to provide Tenneco shock absorbers using Koni valves for use in Daimler vehicles.

14. Daimler did not specify that it wanted Koni to work with a specific Tenneco entity. Koni was not familiar with the corporate structure of the Tenneco family of entities, and Koni did not attribute any significance or have any reason to attribute any significance to which Tenneco entity or entities it worked with. As discussed in more detail below, the Tenneco entities that Koni worked with functioned and held themselves out as a single entity.

15. Koni was not aware of any material distinction between the various Tenneco legal entities (at least in any way relevant to Koni). This was consistent with how Tenneco describes itself. For example, the website www.tenneco.com states that Tenneco (Parent) is "an $8.6 billion global manufacturing company" that is "one of the world's leading designers, manufacturers and distributors of Clean Air and Ride Performance products and technology solutions for diversified markets, including light vehicle, commercial truck, off-highway equipment and the aftermarket."

16. The Tenneco website further states that Tenneco (Parent) "serve[s] our customers from 91 manufacturing facilities and 15 engineering and technical centers around the world, delivering advanced technologies, quality products, powerful brands and outstanding engineering and manufacturing capabilities."

17.     The Tenneco website further states that Tenneco (Parent) is "[h]eadquartered in Lake Forest, Illinois" and its "31,000 employees around the world demonstrate the company's commitment to shareholder value, our customers' success, employee engagement and sustainability."

18.     On information and belief, the description of Tenneco (Parent) on the www.tenneco.com website reflects that the Tenneco family of companies, including Tenneco (Parent) and Tenneco (U.S. Subsidiary), act and function as a single entity, and intend for the public, including Koni, to perceive and attribute the actions and employees of any Tenneco entity to a unitary Tenneco entity.

19.     Daimler's request that Koni work with Tenneco led to several years of cooperation between Koni and the Tenneco family of companies during which Koni provided confidential information about its FSD technology directly to various Tenneco entities, including Tenneco (U.S. Subsidiary) and Tenneco Automotive Europe NV ("Tenneco (EU Subsidiary)") for the purpose of allowing the Tenneco family of companies to incorporate Koni's FSD valves into Tenneco shock absorbers that would be offered to Daimler and to a variety of car manufacturers.

20.     Koni understood that, whichever Tenneco entity or entities directly received Koni's proprietary information, that Tenneco entity or those Tenneco entities would need to be free to share, and would share, Koni's proprietary information with whatever Tenneco entities reasonably needed to have access to the information.  Koni further understood that all Tenneco entities would maintain the confidentiality of Koni's proprietary information and would use it only for the purpose of developing with Koni a Tenneco shock absorber that incorporated a Koni valve.

21. This understanding was prompted, encouraged, and caused by each of the defendants and, as described in detail below, is reflected in the contracts at issue in this matter.

22. As Koni did not know all of the Tenneco entities, and did not know or have any need to know which Tenneco entities would be dealing directly with Daimler (or other potential customers), Koni had no reason or ability to know which Tenneco entities would reasonably need to access Koni's proprietary information. It would not have been practical for Koni to try to have every Tenneco entity prophylactically sign a confidentiality agreement with Koni, or rely on the signing Tenneco entity to keep track of which Tenneco entities accessed Koni's information and continuously amend the agreements to add signatories each time a new Tenneco entity accessed Koni's information. Koni and Tenneco adopted a more practical approach.

23. Koni and Tenneco phrased their confidentiality agreements to allow the signing Tenneco entity to share Koni's confidential technical information with non-signing Tenneco entities to further the parties' joint development efforts. The agreements provide that the confidentiality obligations run with the confidential information, and the terms of the agreements bind non-signing Tenneco entities that receive Koni's confidential information.

24. For example, early in the parties' relationship, Koni and Tenneco (U.S. Subsidiary) signed a "Confidentiality Agreement," dated August 20, 2008. A copy of this 2008 Agreement is attached hereto as Exhibit 1. The 2008 Agreement was intended to facilitate "a possible transaction between them relating to FSD Technology" while "preserving the confidential and proprietary nature" of each party's "information regarding its products, technology, business, affairs, assets, condition (financial or otherwise) and/or prospects."

25. The 2008 Agreement imposes confidentiality obligations on more than just the signing entity, Tenneco (U.S. Subsidiary). The 2008 Agreement imposes the confidentiality

obligations on all affiliated Tenneco entities that receive Koni's confidential information.  The 2008 Agreement included the following obligation:

> "2. (a) Each Receiving Party shall keep all Information it receives or obtains from a Disclosing Party confidential and shall not, without the prior written consent of the Disclosing Party, disclose such Information, in whole or in part, and shall not use such Information, directly or indirectly, for any purpose other than in connection with the Transaction."

26.     The 2008 Agreement defines a "Receiving Party" as "a Party and/or its Affiliates and Representatives that receives or otherwise obtains specified Information from a Disclosing Party."

27.     The 2008 Agreement defines the term "Affiliate" as an entity that "directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the Person specified of [*sic*] a Party."

28.     The 2008 Agreement defines "Representatives" as "all Persons acting on behalf of a Party."  (*Id.* at 1(f).)

29.     The definition of "Receiving Party" in combination with the definition of "Affiliates," authorized Tenneco (U.S. Subsidiary) to share Koni's confidential information with affiliated Tenneco entities under common control.  The contract language also imposed the confidentiality obligations on affiliated or commonly controlled Tenneco entities that received the confidential information.

30.     On information and belief, Tenneco (EU Subsidiary) is a wholly owned subsidiary of Tenneco (U.S. Subsidiary), and Tenneco (U.S. Subsidiary) is a wholly owned subsidiary of Tenneco (Parent).  (*See* Doc. 45 at 8, n.6 (explaining that Tenneco (Parent) is the parent of Tenneco (U.S. Subsidiary), which is the parent of Tenneco (EU Subsidiary)).)

31.     On information and belief, Tenneco (Parent) is an "Affiliate" of Tenneco (U.S. Subsidiary) under the 2008 Agreement.

32. On information and belief, Tenneco (U.S. Subsidiary) shared proprietary Koni information received under the terms of the 2008 Agreement with Tenneco (Parent). Accordingly, Tenneco (Parent) was bound by the terms of the 2008 Agreement.

33. The 2008 Agreement further provides that:

Each Party shall be responsible for any actions by its Affiliates and/or Representatives which are not in accordance with the agreements herein regarding the conduct of its Affiliates and/or Representatives.

34. This provision did not limit the potential liability of Affiliates or Representatives for their own breaches of the 2008 Agreement. Rather, it expanded the potential liability of the Parties for such breaches. This provision made the signing Party liable for any breach of the 2008 Agreement by an Affiliate or Representative, but it did not eliminate the liability of an Affiliate or Representative for its own breach. This provided Koni with additional protection by allowing Koni to pursue the signing Tenneco entity, the breaching Tenneco entity, or both.

35. Koni and Tenneco (EU Subsidiary) signed a "Confidential Disclosure Agreement," dated April 1, 2010. A copy of this 2010 Agreement is attached hereto as Exhibit 2. This agreement stated that the parties "have been and expect to further engage in discussions" relating to "KONI Frequency Selective Damping (FSD) valve technology," and that the parties intend to "protect any proprietary and novel features" disclosed during such discussions.

36. The 2010 Agreement permitted the signing Tenneco entity, Tenneco (EU Subsidiary), to share Koni's confidential information with related Tenneco entities. The 2010 Agreement provides that "the Party receiving such disclosure may transmit any Information received to its Associated Companies for evaluation under the same terms of confidentiality as

provided herein," and defines the term "Associated Companies" as "any company directly or indirectly controlling, controlled by, or under common control with, a party to this agreement."

37.     On information and belief, both Tenneco (Parent) and Tenneco (U.S. Subsidiary) are "Associated Companies" of Tenneco (EU Subsidiary) under the 2010 Agreement.

38.     The "terms of confidentiality as provided herein" that the 2010 Agreement imposed on related Tenneco entities that received Koni's confidential information included the following:

> [T]he Party receiving such disclosure will not use the Information for any purpose other than for evaluation and will not disclose any of the Information to benefit itself or to damage the disclosing Party unless and until authorized in writing to do so by the disclosing party. . . .

39.     As discussed above, these confidentiality obligations and use restrictions also applied to Associated Companies to whom the receiving Party conveyed the confidential information.

40.     The 2008 Agreement and the 2010 Agreement further indicated that the various Tenneco entities were not distinct in any way meaningful to Koni.  The 2008 Agreement provides that notices to Tenneco (U.S. Subsidiary) should be sent to Tenneco (U.S. Subsidiary) at "Avenue du Bourgetiaan 50, 1130 Brussels, Belgium."  This is the same address the 2010 Agreement specifies for sending notices to Tenneco (EU Subsidiary).  The 2008 Agreement also provides that a copy of any notices should be send to the Law Department at "500 North Field Drive, Lake Forest, IL, 60045."  This is the corporate address of Tenneco (U.S. Subsidiary) and Tenneco (Parent).

41.     During the parties' relationship, Koni directly disclosed to at least Tenneco (U.S Subsidiary) and Tenneco (EU subsidiary) numerous trade secrets relating to Koni's FSD technology.  On information and belief, Tenneco (U.S Subsidiary) and Tenneco (EU subsidiary)

disclosed these trade secrets to other Tenneco entities, including Tenneco (Parent). Koni understood and reasonably expected that all Tenneco entities receiving this information would use the trade secrets strictly for the limited purpose of incorporating Koni's FSD valves into Tenneco's shock absorbers.

42.     Koni identified its trade secrets as confidential.

43.     Koni's trade secrets included, for example, detailed tuning parameters and testing procedures that Koni had developed through extensive research over the course of several years, which could be used to customize Koni's FSD technology for specific vehicles and applications. These confidential tuning parameters and testing procedures were set forth, for example, in a document entitled "FSD Tuning Manual." Koni provided the FSD Tuning Manual to Tenneco engineers at Tenneco's request. Koni does not know whether these engineers were employed by Tenneco (U.S Subsidiary), Tenneco (EU subsidiary), and/or Tenneco (Parent).

44.     In furtherance of their joint efforts to develop Tenneco shock absorbers incorporating Koni's valve technology, Koni signed confidentiality agreements with different Tenneco entities, including the 2008 Agreement with Tenneco (U.S. Subsidiary) and the 2010 Agreement with Tenneco (EU Subsidiary). These agreements covered the same general subject matter regarding incorporation of Koni's FSD valve technology in Tenneco's shock absorbers. Both agreements had choice of law provisions designating the U.S. as providing the governing law, with one identifying Illinois and one identifying New York. The Tenneco family of companies did not assign different sets of engineers or other employees to work with Koni under these agreements. Rather, under these agreements, Koni disclosed its confidential and proprietary information to, and worked with, the same Tenneco engineers. From Koni's

perspective, no aspect of the working relationship changed based on which Tenneco entity signed the agreement.

45. Based on these facts, and on information and belief: Tenneco (Parent) and Tenneco (U.S. Subsidiary) were both involved in working with Koni to develop a Tenneco shock absorber incorporating Koni's FSD valve technology for Daimler and other OEMs; Tenneco (Parent) and Tenneco (U.S. Subsidiary) both received Koni's trade secrets; and, Tenneco (Parent) and Tenneco (U.S. Subsidiary) were both involved in breaching the 2008 and 2010 Agreements and in misappropriating Koni's trade secrets to develop a competing product as set forth below. Without the aid of discovery, Koni does not yet know the details of how Tenneco (Parent) and Tenneco (U.S. Subsidiary) each breached the agreements and misappropriated Koni's trade secrets to develop their competing product.

46. On information and belief, while Tenneco (Parent) and Tenneco (U.S. Subsidiary) were still obtaining trade secrets from Koni, Tenneco (Parent) and Tenneco (U.S. Subsidiary) had secretly decided to begin internal development of their own shock absorber valves. These valves were designed to incorporate Koni's confidential and trade secret FSD valve technology, but enable Tenneco (Parent) and Tenneco (U.S. Subsidiary) to manufacture their own valves and avoid buying valves from Koni. One of the primary Tenneco engineers working on the Koni collaboration with access to Koni's confidential and trade secret information, Mark Nowaczyk, led the clandestine development of Tenneco's imitation valve.

47. Mr. Nowaczyk is also the lead engineer named on numerous U.S. and foreign patents that Tenneco (U.S. Subsidiary) filed throughout the world relating to Tenneco's imitation valves. For example, at least the following U.S. patents were filed by and are assigned to Tenneco (U.S. Subsidiary), are titled "Shock Absorber With Frequency Dependent Passive

Valve," and list Mr. Nowaczyk as the first named inventor:  U.S. Patent No. 9,080,634, U.S. Patent No. 9,222,539, U.S. Patent No. 9, 239,092, and U.S. Patent No. 9,441, 700.   On information and belief, Tenneco (U.S. Subsidiary) also filed and is the assignee of the following related international and foreign applications filed throughout the world:  DE112014002982T5 (Germany), DE112014002982T8 (Germany), WO2015012945A1 (Patent Cooperation Treaty (PCT) Application),   CN106662189A   (China),   DE112015003748T5   (Germany), WO2016025098A1  (PCT Application), CN105452708A  (China), EP3039312A1  (Europe), EP3039312A4  (Europe),  WO2015030884A1(PCT Application),  CN106795934A  (China), DE112015003745T5 (Germany), and WO2016025097A1 (PCT Application).

48.    Tenneco's valve project resulted in a type of valve Tenneco named "RC1" (Rebound Compression 1), which has been used in Jaguar XF sedans in the United States and which is now being incorporated into additional vehicles from Chrysler in the United States.  On information and belief, when designing and tuning the RC1 valves for Jaguar and Chrysler, Tenneco (Parent) and Tenneco (U.S. Subsidiary) and their engineers relied impermissibly on the trade secrets obtained from Koni.  Further, on information and belief, Tenneco (Parent) and Tenneco (U.S. Subsidiary) continue to rely on Koni's trade secrets by manufacturing and selling RC1 valves, and shock absorbers using RC1 valves, that were designed and tuned using Koni's trade secrets, including manufacturing and selling such shock absorbers and valves in the United States.

49.    After discovering that Tenneco (Parent) and Tenneco (U.S. Subsidiary) may be selling shock absorbers incorporating FSD-imitating valves, Koni contacted Tenneco (Parent) and Tenneco (U.S. Subsidiary) to try to resolve this dispute amicably.  Despite several rounds of

correspondence and discussions, Tenneco (Parent) and Tenneco (U.S. Subsidiary) refused to cease their use of Koni's technology or to properly compensate Koni for such use.

50.     Koni has been harmed, including by losing proceeds from sales to Jaguar and Chrysler.  Further, Koni will continue to be harmed as long as Tenneco (Parent) and Tenneco (U.S. Subsidiary) are allowed to continue their improper use of Koni's technology in Tenneco valves and shock absorbers.  For example, Koni continues to suffer harm because Tenneco (Parent) and Tenneco (U.S. Subsidiary)'s sales to Chrysler of RC1 valves that incorporate Koni's trade secrets are ongoing.

## IV.   FIRST CLAIM FOR RELIEF

### (Violation of the Defend Trade Secrets Act Against Tenneco (U.S. Subsidiary))

51.     Koni incorporates by reference the allegations set forth in paragraphs 1-50 above and paragraphs 57-149 below.

52.     The DTSA provides a Federal private right of action for misappropriation of trade secrets.  18 U.S.C. § 1836(b).  Koni owns trade secrets, as defined by DTSA, which relate to Koni's FSD technology and which Tenneco (U.S. Subsidiary) willfully and maliciously misappropriated.  Koni's trade secrets are used in the design and manufacture of shock absorbers and shock absorber valves that are used and intended for use in interstate commerce.

53.     Koni took reasonable measures to ensure the confidentiality of its trade secrets, including the execution of the Confidentiality Agreement in 2008 and the Confidential Disclosure Agreement in 2010.

54.     Tenneco (U.S. Subsidiary) misappropriated Koni's trade secrets at least by its use and threatened use of those trade secrets without Koni's consent, having acquired the trade secrets under circumstances giving rise to duties to maintain the secrecy of the trade secrets and

to limit their use.  Tenneco (U.S. Subsidiary)'s unauthorized and improper use of Koni's trade secrets has occurred both before and after the enactment of the DTSA in May 2016, and such unauthorized and improper use is ongoing and continues to this day.

55.     Koni has no adequate remedy at law to protect against Tenneco (U.S. Subsidiary)'s actual and threatened use of Koni's trade secrets.  Moreover, Tenneco (U.S. Subsidiary)'s misappropriation and use of Koni's trade secrets has caused and will cause irreparable injury to Koni, including the loss of customer goodwill, competitive position, and future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate. Thus, injunctive relief is necessary and appropriate to restrain Tenneco (U.S. Subsidiary)'s misappropriation.

56.     As a direct and proximate result of Tenneco (U.S. Subsidiary)'s actual and threatened use of Koni's trade secrets, Koni has suffered losses and Tenneco (U.S. Subsidiary) has been unjustly enriched.  Thus, Koni is entitled to damages under the DTSA.  By reason of Tenneco (U.S. Subsidiary)'s willful and malicious acts of misappropriation, Koni is also entitled to exemplary damages and attorneys' fees under the DTSA.

## V.     SECOND CLAIM FOR RELIEF

### (Violation of the Defend Trade Secrets Act Against Tenneco (Parent))

57.     Koni incorporates by reference the allegations set forth in paragraphs 1-56 above and paragraphs 63-149 below.

58.     The DTSA provides a Federal private right of action for misappropriation of trade secrets.  18 U.S.C. § 1836(b).  Koni owns trade secrets, as defined by DTSA, which relate to Koni's FSD technology and which Tenneco (Parent) willfully and maliciously misappropriated.

Koni's trade secrets are used in the design and manufacture of shock absorbers and shock absorber valves that are used and intended for use in interstate commerce.

59.     Koni took reasonable measures to ensure the confidentiality of its trade secrets, including the execution of the Confidentiality Agreement in 2008 and the Confidential Disclosure Agreement in 2010.

60.     Tenneco (Parent) misappropriated Koni's trade secrets at least by its use and threatened use of those trade secrets without Koni's consent, having acquired the trade secrets under circumstances giving rise to duties to maintain the secrecy of the trade secrets and to limit their use.   Tenneco (Parent)'s unauthorized and improper use of Koni's trade secrets has occurred both before and after the enactment of the DTSA in May 2016, and such unauthorized and improper use is ongoing and continues to this day.

61.     Koni has no adequate remedy at law to protect against Tenneco (Parent)'s actual and threatened use of Koni's trade secrets.  Moreover, Tenneco (Parent)'s misappropriation and use of Koni's trade secrets has caused and will cause irreparable injury to Koni, including the loss of customer goodwill, competitive position, and future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate. Thus, injunctive relief is necessary and appropriate to restrain Tenneco (Parent)'s misappropriation.

62.     As a direct and proximate result of Tenneco (Parent)'s actual and threatened use of Koni's trade secrets, Koni has suffered losses and Tenneco (Parent) has been unjustly enriched.  Thus, Koni is entitled to damages under the DTSA.  By reason of Tenneco (Parent)'s willful and malicious acts of misappropriation, Koni is also entitled to exemplary damages and attorneys' fees under the DTSA.

## VI.   THIRD CLAIM FOR RELIEF

### (Violation of the Illinois Trade Secret Act Against Tenneco (U.S. Subsidiary))

63.    Koni incorporates by reference the allegations set forth in paragraphs 1-62 above and paragraphs 68-149 below.

64.    Koni's confidential information regarding its FSD technology constitutes "trade secrets" under the Illinois Trade Secrets Act, 765 ILCS 1065/1(d).   Koni's trade secrets are extremely valuable to Koni, which has expended considerable time, effort, and money to develop and safeguard them.   With this information, Koni has been able to compete more effectively for business in the field of shock absorbers and shock absorber valves.   Armed with some or all of Koni's trade secrets, Tenneco (U.S. Subsidiary) will be able to compete unfairly with Koni for the same limited business opportunities.

65.    Koni is informed and believes, and thereupon alleges, that Tenneco (U.S. Subsidiary) willfully and maliciously misappropriated Koni's trade secrets relating to FSD technology.   Specifically, Tenneco (U.S. Subsidiary) engaged in use and threatened use of Koni's trade secrets without Koni's consent, having acquired those trade secrets under circumstances giving rise to duties to maintain their secrecy and limit their use.   Tenneco (U.S. Subsidiary)'s unauthorized and improper use of Koni's trade secrets is ongoing and continues to this day.

66.    Unless enjoined by this Court, Tenneco (U.S. Subsidiary) will continue to misappropriate Koni's trade secrets.   Moreover, Tenneco (U.S. Subsidiary)'s misappropriation and use of Koni's trade secrets has caused and will cause irreparable injury to Koni, including the loss of customer goodwill, competitive position, and future business.   No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are

therefore inadequate. Thus, injunctive relief is necessary and appropriate to restrain Tenneco (U.S. Subsidiary)'s misappropriation.

67.     As a direct and proximate result of Tenneco (U.S. Subsidiary)'s actual and threatened use of Koni's trade secrets, Koni has suffered losses and Tenneco (U.S. Subsidiary) has been unjustly enriched. Thus, Koni is entitled to damages. By reason of Tenneco (U.S. Subsidiary)'s willful and malicious acts of misappropriation, Koni is also entitled to exemplary damages and attorneys' fees.

## VII.  FOURTH CLAIM FOR RELIEF

### (Violation of the Illinois Trade Secret Act Against Tenneco (Parent))

68.     Koni incorporates by reference the allegations set forth in paragraphs 1-67 above and paragraphs 73-149 below.

69.     Koni's confidential information regarding its FSD technology constitutes "trade secrets" under the Illinois Trade Secrets Act, 765 ILCS 1065/1(d). Koni's trade secrets are extremely valuable to Koni, which has expended considerable time, effort, and money to develop and safeguard them. With this information, Koni has been able to compete more effectively for business in the field of shock absorbers and shock absorber valves. Armed with some or all of Koni's trade secrets, Tenneco (Parent) will be able to compete unfairly with Koni for the same limited business opportunities.

70.     Koni is informed and believes, and thereupon alleges, that Tenneco (Parent) willfully and maliciously misappropriated Koni's trade secrets relating to FSD technology. Specifically, Tenneco (Parent) engaged in use and threatened use of Koni's trade secrets without Koni's consent, having acquired those trade secrets under circumstances giving rise to duties to

maintain their secrecy and limit their use.  Tenneco (Parent)'s unauthorized and improper use of Koni's trade secrets is ongoing and continues to this day.

71.     Unless enjoined by this Court, Tenneco (Parent) will continue to misappropriate Koni's trade secrets.  Moreover, Tenneco (Parent)'s misappropriation and use of Koni's trade secrets has caused and will cause irreparable injury to Koni, including the loss of customer goodwill, competitive position, and future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.  Thus, injunctive relief is necessary and appropriate to restrain Tenneco (Parent)'s misappropriation.

72.     As a direct and proximate result of Tenneco (Parent)'s actual and threatened use of Koni's trade secrets, Koni has suffered losses and Tenneco (Parent) has been unjustly enriched.  Thus, Koni is entitled to damages.  By reason of Tenneco (Parent)'s willful and malicious acts of misappropriation, Koni is also entitled to exemplary damages and attorneys' fees.

### VIII.  <u>FIFTH CLAIM FOR RELIEF</u>

### <u>(Breach of 2008 Agreement by Tenneco (U.S. Subsidiary))</u>

73.     Koni incorporates by reference the allegations set forth in paragraphs 1-72 above and paragraphs 76-149 below.

74.     The 2008 Agreement obligated Tenneco (U.S. Subsidiary) to limit its use of Koni's confidential information to purposes connected with the potential transaction that the parties were considering.  Tenneco (U.S. Subsidiary) breached the 2008 Agreement, and continues to breach the 2008 Agreement, by using Koni's confidential information for improper

and unauthorized purposes, such as the development, tuning, manufacturing, and/or selling of its own valves and shock absorbers.

75.     As a result of Tenneco (U.S. Subsidiary)'s breaches, Koni has suffered actual harm, including damages, loss of competitive position, and loss of future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.  In the 2008 Agreement itself (Section 4), Tenneco (U.S. Subsidiary) acknowledged that Koni would be irreparably harmed and entitled to injunctive relief if Tenneco (U.S. Subsidiary) breached that Agreement.

## IX.  SIXTH CLAIM FOR RELIEF

### (Breach of 2008 Agreement by Tenneco (Parent))

76.     Koni incorporates by reference the allegations set forth in paragraphs 1-75 above and paragraphs 87-149 below.

77.     The 2008 Agreement obligated Tenneco (Parent) to limit its use of Koni's confidential information to purposes connected with the potential transaction that the parties were considering.  Tenneco (Parent) breached the 2008 Agreement, and continues to breach the 2008 Agreement, by using Koni's confidential information for improper and unauthorized purposes, such as the development, tuning, manufacturing, and/or selling of its own valves and shock absorbers.

78.     The 2008 Agreement imposed the confidentiality obligations on affiliated or commonly controlled Tenneco entities that received Koni's confidential information.   On information and belief, Tenneco (Parent) received Koni's confidential information from Tenneco (U.S. Subsidiary).  Tenneco (Parent) is liable for breach of the 2008 Agreement because the

parties intended the 2008 Agreement to bind related Tenneco corporate entities under common control who received Koni's confidential information.

79.     Tenneco (Parent) is liable for breach of the 2008 Agreement because Tenneco (U.S. Subsidiary) signed the 2008 Agreement as the actual or apparent agent for Tenneco (Parent) in obtaining access to Koni's confidential information.   On information and belief, Tenneco (Parent) consented or knowingly acquiesced to Tenneco (U.S. Subsidiary) exercising its authority by obtaining Koni's confidential information though the 2008 Agreement.   Koni reasonably concluded that Tenneco (U.S. Subsidiary) was, or had the authority to act as, an agent of Tenneco (Parent) in receiving Koni's confidential information on behalf of Tenneco (Parent), conveying that information to Tenneco (Parent), and agreeing on behalf of Tenneco (Parent) to be bound by the 2008 Agreement.   Koni justifiably and detrimentally relied on Tenneco (U.S. Subsidiary)'s apparent or actual authority by disclosing its confidential information to Tenneco (U.S. Subsidiary) under the 2008 Agreement and allowing Tenneco (U.S. Subsidiary) to disclose such information to Tenneco (Parent).

80.     Tenneco (Parent) is liable for breach of the 2008 Agreement because Tenneco (Parent) agreed to be bound by, and assumed the obligations of, the 2008 Agreement by receiving Koni's confidential information.

81.     Tenneco (Parent) obtained access to Koni's confidential information through the 2008 Agreement, which provided that all receiving entities would be bound by the agreement's terms.   In addition, Tenneco (Parent)'s public descriptions of the Tenneco family of companies without distinguishing between the various entities, and the  designation of common addresses in the 2008 Agreement and 2010 Agreement, reasonably induced Koni to rely on the language of the 2008 Agreement as binding all Tenneco entities that received Koni's confidential

information.  Accordingly, Tenneco (Parent) is liable for breach of the 2008 Agreement because Tenneco (Parent) is estopped from disputing it is bound by the 2008 Agreement.

82.     Tenneco (Parent) and Tenneco (U.S. Subsidiary) induced Koni to enter into the 2008 Agreement, induced Koni to disclose its confidential information to Tenneco (U.S. Subsidiary), and induced Koni to allow Tenneco (U.S. Subsidiary) to disclose Koni's confidential information to Tenneco (Parent) by inducing Koni to understand that, regardless of which Tenneco entity signed the 2008 Agreement, all Tenneco entities who received Koni's confidential information would be bound by the 2008 Agreement.  Accordingly, Tenneco (Parent) is estopped from disputing that it is bound by 2008 Agreement.

83.     Tenneco (Parent) is directly liable for the breaches of the 2008 Agreement by Tenneco (U.S. Subsidiary) because, on information and belief, Tenneco (Parent) directed, caused, and induced Tenneco (U.S. Subsidiary) to breach the 2008 Agreement.

84.     Alternatively, Tenneco (Parent) and Tenneco (U.S. Subsidiary) assert in their Motion to Stay that, while "not technically identical," each of Tenneco (Parent) and Tenneco (U.S. Subsidiary) is "substantially the same" as Tenneco (EU Subsidiary).  (Doc. 42, p. 6.) Particularly in light of Tenneco (Parent)'s representations to the public treating all Tenneco entities as synonymous with Tenneco (Parent), Tenneco (Parent) is estopped from disputing that it is liable for breaches of the 2008 Agreement.

85.     Because Tenneco (Parent) and Tenneco (U.S. Subsidiary) induced Koni to enter into the 2008 Agreement, induced Koni to disclose its confidential information to Tenneco (U.S. Subsidiary), and induced Koni to allow Tenneco (U.S. Subsidiary) to disclose Koni's confidential information to Tenneco (Parent) by inducing Koni to understand that, regardless of which Tenneco entity signed the 2008 Agreement, all Tenneco entities who received Koni's

confidential information would be bound by the 2008 Agreement, it would be fundamentally unfair to Koni to treat Tenneco (Parent) as a distinct entity from Tenneco (U.S. Subsidiary) if that meant that Tenneco (Parent) would not be liable for breach of the 2008 Agreement.

86.     As a result of Tenneco (Parent)'s breaches, Koni has suffered actual harm, including damages, loss of competitive position, and loss of future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.

## X.   SEVENTH CLAIM FOR RELIEF

### (Breach of 2010 Agreement by Tenneco (Parent))

87.     Koni incorporates by reference the allegations set forth in paragraphs 1-86 above and paragraphs 98-149 below.

88.     The 2010 Agreement obligated Tenneco (Parent) to limit its use of Koni's confidential information to purposes connected with the potential transaction that the parties were considering.  Tenneco (Parent) breached the 2010 Agreement, and continues to breach the 2010 Agreement, by using Koni's confidential information for improper and unauthorized purposes, such as the development, tuning, manufacturing, and/or selling of its own valves and shock absorbers.

89.     The 2010 Agreement imposed the confidentiality obligations on affiliated or commonly controlled Tenneco entities that received Koni's confidential information.  On information and belief, Tenneco (Parent) received Koni's confidential information directly from Tenneco (EU Subsidiary) or indirectly through Tenneco (U.S. Subsidiary).  Tenneco (Parent) is liable for breach of the 2010 Agreement because the parties intended the 2010 Agreement to

bind related Tenneco corporate entities under common control who received Koni's confidential information.

90.     Tenneco (Parent) is liable for breach of the 2010 Agreement because Tenneco (EU Subsidiary) signed the 2010 Agreement as the actual or apparent agent for Tenneco (Parent) in obtaining access to Koni's confidential information.  On information and belief, Tenneco (Parent) consented or knowingly acquiesced to Tenneco (EU Subsidiary) exercising its authority by obtaining Koni's confidential information though the 2010 Agreement.  Koni reasonably concluded that Tenneco (EU Subsidiary)  was, or had the authority to act as, an agent of Tenneco (Parent) in receiving Koni's confidential information on behalf of Tenneco (Parent), conveying that information to Tenneco (Parent), and agreeing on behalf of Tenneco (Parent) to be bound by the 2010 Agreement.  Koni justifiably and detrimentally relied on Tenneco (EU Subsidiary)'s apparent or actual authority by disclosing its confidential information to Tenneco (EU Subsidiary) under the 2010 Agreement and allowing Tenneco (EU Subsidiary) to disclose such information to Tenneco (Parent).

91.     Tenneco (Parent) is liable for breach of the 2010 Agreement because Tenneco (Parent) agreed to be bound by, and assumed the obligations of, the 2010 Agreement by receiving Koni's confidential information.

92.     Tenneco (Parent) obtained access to Koni's confidential information through the 2010 Agreement, which provided that all receiving entities would be bound by the agreement's terms.  In addition, Tenneco (Parent)'s public descriptions of the Tenneco family of companies without distinguishing between the various entities, and the  designation of common addresses in the 2008 Agreement and 2010 Agreement, reasonably induced Koni to rely on the language of the 2010 Agreement as binding all Tenneco entities that received Koni's confidential

information. Accordingly, Tenneco (Parent) is liable for breach of the 2010 Agreement because Tenneco (Parent) is estopped from disputing it is bound by the 2010 Agreement.

93. Tenneco (Parent) and Tenneco (EU Subsidiary) induced Koni to enter into the 2010 Agreement, induced Koni to disclose its confidential information to Tenneco (EU Subsidiary), and induced Koni to allow Tenneco (EU Subsidiary) to disclose Koni's confidential information to Tenneco (Parent) by inducing Koni to understand that, regardless of which Tenneco entity signed the 2010 Agreement, all Tenneco entities who received Koni's confidential information would be bound by the 2010 Agreement. Accordingly, Tenneco (Parent) is estopped from disputing that it is bound by 2010 Agreement.

94. Tenneco (Parent) is directly liable for the breaches of the 2010 Agreement by Tenneco (EU Subsidiary) because, on information and belief, Tenneco (Parent) directed, caused, and induced Tenneco (EU Subsidiary) to breach the 2010 Agreement.

95. Alternatively, Tenneco (Parent) and Tenneco (U.S. Subsidiary) assert in their Motion to Stay that, while "not technically identical," each of Tenneco (Parent) and Tenneco (U.S. Subsidiary) is "substantially the same" as Tenneco (EU Subsidiary). (Doc. 42, p. 6.) Particularly in light of Tenneco (Parent)'s representations to the public treating all Tenneco entities as synonymous with Tenneco (Parent), Tenneco (Parent) is estopped from disputing that it is liable for breaches of the 2010 Agreement.

96. Because Tenneco (Parent) and Tenneco (EU Subsidiary) induced Koni to enter into the 2010 Agreement, induced Koni to disclose its confidential information to Tenneco (EU Subsidiary), and induced Koni to allow Tenneco (EU Subsidiary) to disclose Koni's confidential information to Tenneco (Parent) by inducing Koni to understand that, regardless of which Tenneco entity signed the 2010 Agreement, all Tenneco entities who received Koni's

confidential information would be bound by the 2010 Agreement, it would be fundamentally unfair to Koni to treat Tenneco (Parent) as a distinct entity from Tenneco (EU Subsidiary) if that meant that Tenneco (Parent) would not be liable for breach of the 2010 Agreement.

97.     As a result of Tenneco (Parent)'s breaches, Koni has suffered actual harm, including damages, loss of competitive position, and loss of future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.

## XI.  EIGHTH CLAIM FOR RELIEF

### (Breach of 2010 Agreement by Tenneco (U.S. Subsidiary))

98.     Koni incorporates by reference the allegations set forth in paragraphs 1-97 above and paragraphs 109-149 below.

99.     The 2010 Agreement obligated Tenneco (U.S. Subsidiary) to limit its use of Koni's confidential information to purposes connected with the potential transaction that the parties were considering.  Tenneco (U.S. Subsidiary) breached the 2010 Agreement, and continues to breach the 2010 Agreement, by using Koni's confidential information for improper and unauthorized purposes, such as the development, tuning, manufacturing, and/or selling of its own valves and shock absorbers.

100.    The 2010 Agreement imposed the confidentiality obligations on affiliated or commonly controlled Tenneco entities that received Koni's confidential information.  On information and belief, Tenneco (U.S. Subsidiary) received Koni's confidential information from Tenneco (EU Subsidiary).  Tenneco (U.S. Subsidiary) is liable for breach of the 2010 Agreement because the parties intended the 2010 Agreement to bind related Tenneco corporate entities under common control who received Koni's confidential information.

101.    Tenneco (U.S. Subsidiary) is liable for breach of the 2010 Agreement because Tenneco (EU Subsidiary) signed the 2010 Agreement as the actual or apparent agent for Tenneco (U.S. Subsidiary) in obtaining access to Koni's confidential information.  On information and belief, Tenneco (U.S. Subsidiary) consented or knowingly acquiesced to Tenneco (EU Subsidiary) exercising its authority by obtaining Koni's confidential information though the 2010 Agreement.  Koni reasonably concluded that Tenneco (EU Subsidiary)  was, or had the authority to act as, an agent of Tenneco (U.S. Subsidiary) in receiving Koni's confidential information on behalf of Tenneco (U.S. Subsidiary), conveying that information to Tenneco (U.S. Subsidiary), and agreeing on behalf of Tenneco (U.S. Subsidiary) to be bound by the 2010 Agreement.  Koni justifiably and detrimentally relied on Tenneco (EU Subsidiary)'s apparent or actual authority by disclosing its confidential information to Tenneco (EU Subsidiary) under the 2010 Agreement and allowing Tenneco (EU Subsidiary) to disclose such information to Tenneco (U.S. Subsidiary).

102.    Tenneco (U.S. Subsidiary) is liable for breach of the 2010 Agreement because Tenneco (U.S. Subsidiary) agreed to be bound by, and assumed the obligations of, the 2010 Agreement by receiving Koni's confidential information.

103.    Tenneco (U.S. Subsidiary) obtained access to Koni's confidential information through the 2010 Agreement, which provided that all receiving entities would be bound by the agreement's terms.  In addition, Tenneco (U.S. Subsidiary)'s public descriptions of the Tenneco family of companies without distinguishing between the various entities, and the  designation of common addresses in the 2008 Agreement and 2010 Agreement, reasonably induced Koni to rely on the language of the 2010 Agreement as binding all Tenneco entities that received Koni's confidential information.  Accordingly, Tenneco (U.S. Subsidiary) is liable for breach of the

2010 Agreement because Tenneco (U.S. Subsidiary) is estopped from disputing it is bound by the 2010 Agreement.

104.    Tenneco (U.S. Subsidiary) and Tenneco (EU Subsidiary) induced Koni to enter into the 2010 Agreement, induced Koni to disclose its confidential information to Tenneco (EU Subsidiary), and induced Koni to allow Tenneco (EU Subsidiary) to disclose Koni's confidential information to Tenneco (U.S. Subsidiary) by inducing Koni to understand that, regardless of which Tenneco entity signed the 2010 Agreement, all Tenneco entities who received Koni's confidential information would be bound by the 2010 Agreement.  Accordingly, Tenneco (U.S. Subsidiary) is estopped from disputing that it is bound by 2010 Agreement.

105.    Tenneco (U.S. Subsidiary) is directly liable for the breaches of the 2010 Agreement by Tenneco (EU Subsidiary) because, on information and belief, Tenneco (U.S. Subsidiary) directed, caused, and induced Tenneco (EU Subsidiary) to breach the 2010 Agreement.

106.    Alternatively, Tenneco (Parent) and Tenneco (U.S. Subsidiary) assert in their Motion to Stay that, while "not technically identical," each of Tenneco (Parent) and Tenneco (U.S. Subsidiary) is "substantially the same" as Tenneco (EU Subsidiary).   (Doc. 42, p. 6.) Particularly in light of Tenneco (Parent)'s representations to the public treating all Tenneco entities as synonymous with Tenneco (Parent), Tenneco (U.S. Subsidiary) is estopped from disputing that it is liable for breaches of the 2010 Agreement.

107.    Because Tenneco (U.S. Subsidiary) and Tenneco (EU Subsidiary) induced Koni to enter into the 2010 Agreement, induced Koni to disclose its confidential information to Tenneco (EU Subsidiary), and induced Koni to allow Tenneco (EU Subsidiary) to disclose Koni's confidential information to Tenneco (U.S. Subsidiary) by inducing Koni to understand

that, regardless of which Tenneco entity signed the 2010 Agreement, all Tenneco entities who received Koni's confidential information would be bound by the 2010 Agreement, it would be fundamentally unfair to Koni to treat Tenneco (U.S. Subsidiary) as a distinct entity from Tenneco (EU Subsidiary) if that meant that Tenneco (U.S. Subsidiary) would not be liable for breach of the 2010 Agreement.

108.   As a result of Tenneco (U.S. Subsidiary)'s breaches, Koni has suffered actual harm, including damages, loss of competitive position, and loss of future business.  No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.

## XII.  NINTH CLAIM FOR RELIEF

### (Tortious Interference With Contract Against Tenneco (Parent))

109.   Koni incorporates by reference the allegations set forth in paragraphs 1-108 above and paragraphs 115-149 below.

110.   Alternatively, if Tenneco (Parent) cannot be liable for breach of the 2008 Agreement and/or the 2010 Agreement, it is liable for intentionally interfering with Koni's contractual relationship with Tenneco (U.S. Subsidiary) regarding the 2008 Agreement and/or Koni's contractual relationship with Tenneco (EU Subsidiary) regarding the 2010 Agreement.

111.   On information and belief, Tenneco (Parent) was aware of the 2008 Agreement and 2010 Agreement and intentionally induced Tenneco (U.S. Subsidiary) to breach the 2008 Agreement and the 2010 Agreement.

112.   On information and belief, Tenneco (Parent) intentionally induced Tenneco (EU Subsidiary) to breach the 2010 Agreement.

113. As a result of Tenneco (Parent)'s interference, Tenneco (U.S. Subsidiary) breached the 2008 Agreement and Tenneco (EU Subsidiary) breached the 2010 Agreement.

114. Koni has suffered actual harm, including damages, loss of competitive position, and loss of future business. No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.

### XIII.  TENTH CLAIM FOR RELIEF

#### (Tortious Interference With Contract Against Tenneco (U.S. Subsidiary))

115. Koni incorporates by reference the allegations set forth in paragraphs 1-114 above and paragraphs 120-149 below.

116. Alternatively, if Tenneco (U.S. Subsidiary) cannot be liable for breach of the 2010 Agreement, it is liable for intentionally interfering with Koni's contractual relationship with Tenneco (EU Subsidiary) regarding the 2010 Agreement.

117. On information and belief, Tenneco (U.S. Subsidiary) was aware of the 2010 Agreement and intentionally induced Tenneco (EU Subsidiary) to breach the 2010 Agreement.

118. As a result of Tenneco (U.S. Subsidiary)'s interference, Tenneco (EU Subsidiary) breached the 2010 Agreement.

119. Koni has suffered actual harm, including damages, loss of competitive position, and loss of future business. No amount of money can fully and accurately compensate Koni for these losses, and Koni's remedies at law are therefore inadequate.

### XIV.  ELEVENTH CLAIM FOR RELIEF

#### (Fraud Against Tenneco (Parent))

120. Koni incorporates by reference the allegations set forth in paragraphs 1-119 above and paragraphs 127-149 below.

121.    On information and belief, particularly in light of the development efforts between Koni and various Tenneco entities, and the contractual relationship and obligations between Koni and various Tenneco entities, Tenneco (Parent) concealed the material fact of its competing development program, including that some of the same engineers and/or employees who were purportedly working with Koni were also working to develop a competing valve, under circumstances creating a duty to speak.

122.    On information and belief, Tenneco (Parent) intended to induce Koni to falsely believe that Tenneco (Parent) was not secretly developing a competing valve.

123.    Koni could not have discovered the truth about Tenneco (Parent)'s development efforts through reasonable inquiry or inspection (or was prevented from doing so) because Tenneco (Parent) kept its competing development efforts secret from Koni.  On information and belief, Tenneco (Parent) expressly instructed employees to conceal from Koni information about Tenneco's secret development program.   On information and belief, Tenneco (Parent) also planned to generate interest from potential customers in Tenneco's competing valves by installing Tenneco shock absorbers with Koni FSD valves in test cars with the intent of later replacing the Koni FSD valves with Tenneco RC1 valves.

124.    Particularly in light of the development efforts between Koni and various Tenneco entities, and the contractual relationship and obligations between Koni and various Tenneco entities, Koni justifiably relied on Tenneco (Parent)'s failure to disclose its efforts to develop competing products as confirming Koni's understanding that Tenneco (Parent) was not secretly working on developing a competing FSD valve.

125.    Regardless of whether any information Koni conveyed to Tenneco (Parent) and Tenneco (U.S. Subsidiary) constitutes a protectable trade secret, or whether Tenneco (Parent)

and/or Tenneco (U.S. Subsidiary) misappropriated any of that information, Koni would have acted differently if it had been aware of the concealed information. Koni would not have worked with any Tenneco entity to develop a Tenneco shock absorber using FSD valve technology, or to create market demand for a Tenneco shock absorber using FSD valve technology, if Koni had known that Tenneco (Parent) was developing its own competing valves using FSD technology, and particularly not if Koni had known that some of the same Tenneco engineers and/or employees that were working with Koni were also working to develop Tenneco's competing valve.

126.    Koni was harmed and continues to be harmed by this fraud, including by the amount of time, money, and effort Koni spent working with various Tenneco entities to develop a Tenneco shock absorber using Koni FSD valve technology, other joint development efforts that Koni did not pursue while working with various Tenneco entities, and the benefit Tenneco (Parent) received from working with Koni and having Koni help develop the market for Tenneco shock absorbers using FSD technology while secretly developing its own competing product.

## XV.  TWELFTH CLAIM FOR RELIEF

### (Fraud Against Tenneco (U.S. Subsidiary))

127.    Koni incorporates by reference the allegations set forth in paragraphs 1-126 above and paragraphs 134-149 below.

128.    On information and belief, particularly in light of the development efforts between Koni and various Tenneco entities, and the contractual relationship and obligations between Koni and various Tenneco entities, Tenneco (U.S. Subsidiary) concealed the material fact of its competing development program, including that some of the same engineers and/or

employees who were purportedly working with Koni were also working to develop a competing valve, under circumstances creating a duty to speak.

129. On information and belief, Tenneco (U.S. Subsidiary) intended to induce Koni to falsely believe that Tenneco (U.S. Subsidiary) was not secretly developing a competing valve.

130. Koni could not have discovered the truth about Tenneco (U.S. Subsidiary)'s development efforts through reasonable inquiry or inspection (or was prevented from doing so) because Tenneco (U.S. Subsidiary) kept its competing development efforts secret from Koni. On information and belief, Tenneco (U.S. Subsidiary) expressly instructed employees to conceal from Koni information about Tenneco's secret development program. On information and belief, Tenneco (U.S. Subsidiary) also planned to generate interest from potential customers in Tenneco's competing valves by installing Tenneco shock absorbers with Koni FSD valves in test cars with the intent of later replacing the Koni FSD valves with Tenneco RC1 valves.

131. Particularly in light of the development efforts between Koni and various Tenneco entities, and the contractual relationship and obligations between Koni and various Tenneco entities, Koni justifiably relied on Tenneco (U.S. Subsidiary)'s failure to disclose its efforts to develop competing products as confirming Koni's understanding that Tenneco (U.S. Subsidiary) was not secretly working on developing a competing FSD valve.

132. Regardless of whether any information Koni conveyed to Tenneco (Parent) and Tenneco (U.S. Subsidiary) constitutes a protectable trade secret, or whether Tenneco (Parent) and/or Tenneco (U.S. Subsidiary) misappropriated any of that information, Koni would have acted differently if it had been aware of the concealed information. Koni would not have worked with any Tenneco entity to develop a Tenneco shock absorber using FSD valve technology, or to create market demand for a Tenneco shock absorber using FSD valve technology, if Koni had

known that Tenneco (U.S. Subsidiary) was developing its own competing valves using FSD technology, and particularly not if Koni had known that some of the same Tenneco engineers and/or employees that were working with Koni were also working to develop Tenneco's competing valve.

133.     Koni was harmed and continues to be harmed by this fraud, including by the amount of time, money, and effort Koni spent working with various Tenneco entities to develop a Tenneco shock absorber using Koni FSD valve technology, other joint development efforts that Koni did not pursue while working with various Tenneco entities, and the benefit Tenneco (U.S. Subsidiary) received from working with Koni and having Koni help develop the market for Tenneco shock absorbers using FSD technology while secretly developing its own competing product.

## XVI.  THIRTEENTH CLAIM FOR RELIEF

### (Unfair Competition Against Tenneco (Parent))

134.     Koni incorporates by reference the allegations set forth in paragraphs 1-133 above.

135.     On information and belief, Tenneco (Parent) engaged in the deceptive acts and conduct described above, including concealing from Koni its development of competing FSD valves.

136.     On information and belief, Tenneco (Parent) intended for Koni to rely on this deception, including for the reasons set forth above.

137.     Tenneco (Parent)'s deception occurred in a course of conduct involving trade or commerce.

138.    Koni suffered actual damages that were proximately caused by Tenneco (Parent)'s deception, including for the reasons set forth above.

## XVII. **FOURTEENTH CLAIM FOR RELIEF**

### **(Unfair Competition Against Tenneco (U.S. Subsidiary))**

139.    Koni incorporates by reference the allegations set forth in paragraphs 1-138 above.

140.    On information and belief, Tenneco (U.S. Subsidiary) engaged in the deceptive acts and conduct described above, including concealing from Koni its development of competing FSD valves.

141.    On information and belief, Tenneco (U.S. Subsidiary) intended for Koni to rely on this deception, including for the reasons set forth above.

142.    Tenneco (U.S. Subsidiary)'s deception occurred in a course of conduct involving trade or commerce.

143.    Koni suffered actual damages that were proximately caused by Tenneco (U.S. Subsidiary)'s deception, including for the reasons set forth above.

## XVIII. **FIFTEENTH CLAIM FOR RELIEF**

### **(Unjust Enrichment Against Tenneco (Parent))**

144.    Koni incorporates by reference the allegations set forth in paragraphs 1-143 above.

145.    Tenneco (Parent) unjustly retained a benefit to Koni's detriment, including the benefits described above.

146.    Tenneco (Parent)'s retention of these benefits violates the fundamental principles of justice, equity, and good conscience.

## XIX.  SIXTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment Against Tenneco (U.S. Subsidiary))

147.    Koni incorporates by reference the allegations set forth in paragraphs 1-146 above.

148.    Tenneco (U.S. Subsidiary) unjustly retained a benefit to Koni's detriment, including the benefits described above.

149.    Tenneco (U.S. Subsidiary)'s retention of these benefits violates the fundamental principles of justice, equity, and good conscience.

## XX.  DEMAND FOR JUDGMENT

WHEREFORE, Koni demands judgment in its favor and against Tenneco (Parent) and Tenneco (U.S. Subsidiary), as follows:

A.    That the Court temporarily, preliminarily, and permanently enjoin Tenneco (Parent) and Tenneco (U.S. Subsidiary) from using or allowing any other individual or entity to use, for any purpose, Koni's trade secrets and confidential information;

B.    That the Court award Koni its actual damages caused by Tenneco (Parent) and Tenneco (U.S. Subsidiary) misappropriation of Koni's trade secrets, breach of the agreements, fraud, and unfair competition;

C.    That the Court award Koni damages for (and/or order Tenneco (Parent) and Tenneco (U.S. Subsidiary) to disgorge to Koni) the unjust enrichment caused by Tenneco (Parent) and Tenneco (U.S. Subsidiary) misappropriation of Koni's trade secrets, breach of the agreements, fraud, unfair competition, and unjust enrichment;

D.      That the Court award Koni a reasonable royalty for Tenneco (Parent) and Tenneco (U.S. Subsidiary) use of Koni's trade secrets and breach of the agreements, in the event that the amount of actual damages or unjust enrichment is not established.

E.      That the Court award Koni exemplary damages caused by Tenneco (Parent) and Tenneco (U.S. Subsidiary)'s willful and malicious misappropriation of Koni's trade secrets and fraud;

F.      That the Court award Koni pre-judgment and post-judgment interest where applicable;

G.      That the Court award Koni the reasonable attorneys' fees and costs that it incurs in bringing and prosecuting this action;

H.      That the Court award to Koni any other relief that this Court deems just and equitable.

Respectfully submitted,

KONI B.V.

Date:  June 29, 2018                    By:   */s/ Benjamin A. Katzenellenbogen*

Neil Lloyd
Adam Diederich
Christopher A. Nelson
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL  60606
(312) 258-5500 (t)
(312) 258-5600 (f)
nlloyd@schiffhardin.com
adiederich@schiffhardin.com
cnelson@schiffhardin.com

Michael K. Friedland
Benjamin A. Katzenellenbogen
Nicholas M. Zovko
Justin J. Gillett
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
14th Floor
Irvine, CA  92614
949-760-0404

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff KONI B.V.

hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KONI B.V.

Date: June 29, 2018          By: */s/ Benjamin A. Katzenellenbogen*

Neil Lloyd
Adam Diederich
Christopher A. Nelson
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500 (t)
(312) 258-5600 (f)
nlloyd@schiffhardin.com
adiederich@schiffhardin.com
cnelson@schiffhardin.com

Michael K. Friedland
Benjamin A. Katzenellenbogen
Nicholas M. Zovko
Justin J. Gillett
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
14th Floor
Irvine, CA 92614
949-760-0404

## CERTIFICATE OF SERVICE

I, Benjamin A. Katzenellenbogen, hereby certify that on June 29, 2018, the foregoing was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notification of Electronic Filing issued through the court's ECF System on this date.

*/s/ Benjamin A. Katzenellenbogen*
Benjamin A. Katzenellenbogen

28554762